| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>------------------------------------------------------------ | NOT FOR PUBLICATION |
| In re :<br>PARK WEST CIRCLE REALTY, LLC, and :<br>PARK WEST RADIOLOGY, P.C., :<br>:<br>Debtors. :<br>------------------------------------------------------------ | Chapter 11<br><br>Case No. 10-12965 (AJG)<br><br>(Jointly Administered) |

**OPINION REGARDING MOTION OF CONSTANTINE CANNON LLP FOR AN ORDER TO BE APPOINTED TO THE DEBTORS' COMMITTEE OF UNSECURED CREDITORS**

Before the Court is a motion (the "Motion") by Constantine Cannon LLP ("Constantine Cannon" or the "Movant") for an order pursuant to 11 U.S.C. § 1102(a)(4) and 11 U.S.C. § 105(a), directing the U.S. Trustee ("UST") to appoint Constantine Cannon to the Official Committee of Unsecured Creditors (the "Committee") in the above-captioned debtors' (the "Debtors") Chapter 11 cases.

**Background**

The Debtors are an outpatient radiology practice located on West 57th Street in New York City. In 2006, the Debtors retained Constantine Cannon to represent them in a lawsuit captioned *Park West Radiology P.C. and Park West Circle Realty, LLC v. Carecore National, LLC,* No. 06-CV-13516, pursuant to Section 1 of the Sherman Act in the Southern District of New York (the "Antitrust Lawsuit"). The Antitrust Lawsuit resulted in a settlement on December 16, 2009 and, in its representation of the Debtors, Constantine Cannon incurred fees and holds an undisputed, outstanding claim against the Debtors in the amount of $2,176,872.64. In connection with that amount, the Debtors and Constantine Cannon entered into an agreement whereby the Debtors agreed to pay Constantine Cannon over time on a monthly basis.

On June 2, 2010, the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to §§ 1107(a) and 1108. On June 8, 2010, the Debtors' Chapter 11 cases were consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(a).[1] On June 21, 2010, the UST appointed the Committee pursuant to § 1102(a). The Committee members are (1) LECG, LLC ("LECG"), (2) CRA International, Inc. ("CRA"), and (3) Pinnacle Health Consultants, LLC ("Pinnacle").

On June 25, 2010, Constantine Cannon requested, in writing, for the UST to appoint Constantine Cannon as a member of the Committee and explained that two of the three members of the Committee, CRA and Pinnacle, had no objection to Constantine Cannon serving on the Committee.[2] Further, Constantine Cannon explained that CRA had offered to withdraw as a member of the Committee should Constantine Cannon be appointed. On July 2, 2010, the UST notified Constantine Cannon that its request to be appointed to the Committee was denied.

As a result of the UST's denial of its request, Constantine Cannon filed the Motion on July 9, 2010. The UST filed an objection to the Motion on July 28, 2010. Subsequently, Constantine Cannon filed a reply to the UST's objection on August 2, 2010 and the Committee filed a statement of no objection on August 3, 2010. A hearing (the "Hearing") on the Motion was held before this Court on August 4, 2010.

---

[1] On June 18, 2010, Richard Aborn, the managing partner of Constantine Cannon, advised the UST that Constantine Cannon wished to serve on the Committee.

[2] Constantine Cannon stated that it was unable to reach the representative of LECG. Although the Committee has maintained it has no objection to the appointment of Constantine Cannon; to date, there has been no representation regarding the particular view of LECG.

2

**Discussion**

Constantine Cannon argues, *inter alia*, that because it is the largest unsecured creditor and its claim is significantly higher than those of the other unsecured creditors',[3] it should be appointed to the Committee, pursuant to § 1102(b)(1). Although § 1102(b)(1) provides that "[a] committee of creditors appointed under subsection (a) of this section shall ordinarily consist of the persons, willing to serve, that hold the seven largest claims against the debtor of the kinds represented on such committee," the language of the statute is "'precatory' and 'nonbinding'" and "affords no right of membership." *In re Drexel Burnham Lambert Group, Inc.*, 118 B.R. 209, 212 (Bankr. S.D.N.Y. 1990) (citing H.R. Rep. No. 95-595, at 401 (1977)).

Merely holding one of the largest claims is insufficient for a court to order the UST to change the composition of a committee, absent a showing of an abuse of discretion by the UST or inadequate representation on the Committee. *See id.* at 212-13 (denying creditor's motion for appointment to the creditors' committee where the movant failed to sufficiently plead adequacy of representation). *But cf. Matter of Enduro Stainless, Inc.*, 59 B.R. 603, 605 (Bankr. N.D. Ohio 1986) (stating that failure to appoint one of the seven largest creditors to the committee "may well be an abuse of discretion"); *In re Vermont Real Estate Investment Trust*, 20 B.R. 33, 36 (Bankr. D.Vt. 1982) (appointing the third largest unsecured creditor to the committee with restrictions, stating that due to her pecuniary interest it would be inequitable to disqualify her from all of the activities of the committee).

---

[3] The combined claims of the three creditors currently on the Committee total $236,303.77.

*Abuse of Discretion*

The UST is vested with the power and discretion to appoint creditors' and equity holders' committees, pursuant to § 1102(a). In discussing the basis for not appointing Constantine Cannon, "[t]he United States Trustee questions whether, as a member of the Committee with a fiduciary responsibility to the unsecured creditors, the firm would be able to separate the 'knowledge of the operations of the Debtors' it 'gathered' from its attorney/client relationship with the Debtors." The UST's interpretation of the Movant's June 25, 2010 letter[4] is not unreasonable but her concern regarding the disclosure of privileged information has since been mollified by the Movant's clarifying statements at the Hearing. Although the correctness of the UST's decision for not appointing Constantine Cannon on the basis of the privilege issue is subject to debate, the Court finds that it did not reach the level of abuse of discretion.

Finding that the UST did not abuse her discretion in refusing to appoint Constantine Cannon to the Committee, the Court will now address whether the Committee adequately represents Constantine Cannon's interests.

*Adequacy of Representation*

Although the UST is vested with the power and discretion to appoint creditors' and equity committees, pursuant to § 1102(a), "on request of a party in interest . . . the court may order the United States Trustee to change the membership of a committee

---

[4] In its letter to the UST, dated June 25, 2010, Constantine Cannon stated that although it would not "disclose to other Committee members any confidential communications that we had with the Debtors, . . . [w]e also believe that our knowledge of the operations of the Debtors, gathered from a three year relationship with them, will be of substantial use to the Creditors Committee." *See* Motion, Ex. 3.

4

appointed under this subsection, if the court determines that the change is necessary to ensure adequate representation of creditors or equity security holders." 11 U.S.C. § 1102(a)(4).[5] Upon such request, the court reviews the decision of the UST *de novo*. See *In re Enron Corp.*, 279 B.R. 671, 684 (Bankr. S.D.N.Y. 2002)[6] (reviewing *de novo* the UST's decision not to appoint an additional committee).

Although the Bankruptcy Code does not define "adequate representation," courts often analyze the adequacy of representation by considering factors such as:

> the ability of the committee to function; (2) the nature of the case; (3) the standing and desires of the various constituencies; (4) the ability for creditors to participate in the case even without an official committee and the potential to recover expenses pursuant to § 503(b); (5) whether different classes may be treated differently under a plan and need representation; (6) the motivation of the movants; (7) the delay and additional cost of granting the motion; (8) the point in the proceeding when the motion is made; (9) the tasks the committee is to perform; and (10) any other relevant factors.

*In re Dana Corp.*, 344 B.R. 35, 38 (Bankr. S.D.N.Y. 2006) (citations omitted); *In re Agway. Inc.*, 297 B.R. 371, 374 (Bankr. N.D.N.Y. 2003) (citations omitted); *Enron Corp.*, 279 B.R. at 685 (citations omitted). Such analysis, however, should be made on a

---

[5] The full text of 11 U.S.C. § 1102(a)(4) provides:

> On request of a party in interest and after notice and a hearing, the court may order the United States trustee to change the membership of a committee appointed under this subsection, if the court determines that the change is necessary to ensure adequate representation of creditors or equity security holders. The court may order the United States trustee to increase the number of members of a committee to include a creditor that is a small business concern (as described in section 3(a)(1) of the Small Business Act), if the court determines that the creditor holds claims (of the kind represented by the committee) the aggregate amount of which, in comparison to the annual gross revenue of that creditor, is disproportionately large.

[6] The cases cited throughout the Opinion involve the formation of a separate committee pursuant to § 1102(a)(2); however, the principle and analysis with respect to "adequate representation" are applicable to the considerations of that term as it applies under § 1102(a)(4).

5

case-by-case basis, with no one factor being dispositive, both individually and in the aggregate. *Dana*, 344 B.R. at 38 (citing *In re Kalvar Microfilm*, 195 B.R. 599, 601 (Bankr. D. Del. 1996)). Courts have emphasized that adequate representation "lies not in the uniqueness of a single claim but 'in the nature of the case and the composition of the committee.'" *Drexel,* 118 B.R. at 212 (quoting *In re McLean Indus., Inc.*, 70 B.R. 852, 861 (Bankr. S.D.N.Y. 1987); *accord In re Hills Stores Co.*, 137 B.R. 4, 7 (Bankr. S.D.N.Y. 1996) (stating "what is required is the adequate representation of various creditor types").

(1) Ability of the Committee to Function

Although there have been no allegations regarding the Committee's inability to function, a functioning committee, alone, does not necessarily ensure that all creditors groups are adequately represented. *In re Enron Corp.*, 279 B.R. 671, 685 (Bankr. S.D.N.Y. 2002) ("The problem is that a committee may function just fine . . . and still not adequately represent a particular creditor group."). Therefore, this factor is not dispositive.

(2) Nature of the Case and the Need for Representation

The nature of this case, however, militates in favor of appointing Constantine Cannon to the Committee. In this particular situation, a single creditor, Constantine Cannon, holds over 50% of the Debtors' debt with a claim of $2,176,872.64. The largest creditor on the Committee has a claim of only $139,973.91. At nearly ten times the size of the total combined claims of all three Committee members, Constantine Cannon's

claim dwarfs the Committee's claims, both individually and in the aggregate.[7] *See Matter of Schatz Federal Bearings Co., Inc.*, 5 B.R. 543 (Bankr. S.D.N.Y. 1980) (appointing the Union to the committee where the employees of the debtor had a "substantial claim for unpaid pension benefits"). Further, Constantine Cannon, unlike the other unsecured creditors, holds a personal guarantee on a portion of its claim in the amount of approximately $500,000.00 (the "Personal Guarantee Claim"). Under other circumstances, the Personal Guarantee Claim could arguably be a basis not to appoint an entity to an unsecured creditor's committee due to that entity's ability to recover from sources other than the debtor's estate. However, in light of the uncertain value of the Personal Guarantee Claim at issue, the existence of the other personal guarantees against the Debtors' principals held by secured creditors, and the size of Constantine Cannon's claim relative to the claims of other unsecured creditors in these cases, the Court finds the conflict issue regarding appointing the Movant to the Committee has been adequately addressed and the Movant's participation in the Committee would be beneficial to the Debtors' Chapter 11 cases.

Although committees do not necessarily need to reflect the precise composition of the creditor body, committees should adequately represent the various creditor types. *In re Dana Corp.*, 344 B.R. 35, 38 (Bankr. S.D.N.Y. 2006) (citing *Enron*, 279 B.R. at 690; *Hills Stores*, 137 B.R. at 7. In this particular case, the type of creditor that Constantine Cannon embodies is not currently adequately represented by the Committee since there are no other unsecured creditors who hold a personal guarantee against the Debtors'

---

[7] *See supra* note 3.

principals and no other unsecured creditors who hold as substantial a claim as Constantine Cannon in these cases. *See In re White Motor Credit Corp.*, 27 B.R. 554, 557 (D.C. Ohio 1982) (finding the proportion of large and small shareholders on the equity committee to be reflective of the "kinds of shareholder interests"). Further, the single outstanding debt owed to Constantine Cannon was the primary contributor to the Debtors' filing of the Chapter 11 petition. *See In re Dana Corp.*, 344 B.R. 35, 38 (Bankr. S.D.N.Y. 2006) (denying the request to appoint an official committee of asbestos claimants where the asbestos claims constituted only three percent of the unsecured claims, and "the Debtor's economic plight [was] not asbestos driven"). Thus, all of these facts and circumstances combined favor a finding that Constantine Cannon's interests are not adequately represented.

(3) Standing and Desires of the Various Constituencies

First, standing is not an issue here because Constantine Cannon clearly has standing in the Debtors' Chapter 11 cases. With respect to the desires of the various constituencies, neither the Debtors nor the other creditors oppose Constantine Cannon's motion for appointment. In fact, CRA volunteered to step down and allow Constantine Cannon to take its place on the Committee. The only objection was filed by the UST. The UST voiced her concern regarding Constantine Cannon's relationship and knowledge of confidential information with respect to the Debtors. The Debtors recognize the issue but believe Constantine Cannon would not breach its fiduciary duty to the Debtors. Neither the Committee nor the Debtors actively support the appointment of the Movant, although each recognizes the contribution the Movant could make to the Debtors' reorganization process and do not object to the Motion.

8

Therefore, this factor is neutral to the Court's overall analysis of the Motion.

(4) Motivation of Constantine Cannon & Ability to Participate without Committee Appointment

Although, pursuant to § 1109(b), Constantine Cannon could voice its interests and concerns without appointment to the Committee, due to the nature of the case, the Committee and other unsecured creditors would be better served by Constantine Cannon's appointment. All Committee members owe a fiduciary duty to the unsecured creditor body, *Enron*, 279 B.R. at 689; however, with such a substantial claim, Constantine Cannon has a greater incentive to invest time and effort to make a positive contribution to the Committee. Additionally, Constantine Cannon has worked closely with the Debtors since 2006, developing an understanding of the radiology industry and the Debtors' business that could prove beneficial throughout the bankruptcy process. Thus, although Constantine Cannon's ability to participate without Committee appointment does not necessarily weigh in favor of granting the Motion, Constantine Cannon's motivation will be an asset to the Committee.

(5) The Timing of the Motion and the Cost of Granting the Motion

The Debtors filed the Chapter 11 petitions on June 2, 2010. On June 18, 2010, prior to the appointment of the Committee, Constantine Cannon advised the UST of its desire to serve on the Committee. On June 21, 2010, the UST declined to appoint Constantine Cannon and instead appointed LECG, CRA, and Pinnacle to the Committee. Thereafter, on June 25, 2010, Constantine Cannon sent a letter to the UST, again requesting appointment to the Committee. After the UST again declined Constantine Cannon's request, Constantine Cannon filed the instant Motion on July 9, 2010.

Because the Motion was filed approximately two and half weeks after the appointment of the Committee, the Court finds that the Motion was filed in a timely manner. *Compare Drexel*, 118 B.R. at 211 (finding the movant's motion for appointment untimely where the motion was filed two months after rejection by the UST). Further, because Constantine Cannon seeks only appointment to the Committee, there is no additional cost in granting the Motion.

(6) Privileged Information and Potential Conflicts Issues

The UST, in its decision to deny Constantine Cannon's request to serve on the Committee, seems to be concerned about two issues: (1) potential disclosure of attorney-client privileged information obtained by Constantine Cannon through its representation of the Debtors in the Antitrust Lawsuit, and (2) a conflict of interest between Constantine Cannon and other creditors by virtue of the Personal Guarantee Claim which could affect the Movant's ability in fulfilling its fiduciary duty to other unsecured creditors.[8]

The Court finds that the first of the two issues has been satisfactorily resolved as Constantine Cannon explained that it fully recognizes its attorney-client privilege obligations and its letter to the UST dated June 25, 2010 was meant to inform the UST that its knowledge about the Debtors' business would be an asset to the Committee in the Debtors' Chapter 11 cases. At the Hearing, the Debtors stated that they expect Constantine Cannon to comply with its ethical obligations of not disclosing attorney-client privileged information but have no objection to Constantine Cannon's appointment

---

[8] The UST did not know about the existence of the Personal Guarantee Claim when she first refused to appoint Constantine Cannon to the Committee. At the Hearing, the UST indicated that she first learned about the existence of the Personal Guarantee Claim in the Movant's reply brief filed on August 2, 2010.

as a member of the Committee. In light of the foregoing, the Court finds that the UST's concern regarding the disclosure of privileged information by Constantine Cannon's participation in the Committee has been sufficiently addressed for the purpose of this Motion.

With respect to the second issue, it seems that interested parties are all on notice of the Personal Guarantee Claim but none has objected to the Movant's participation in the Committee. Constantine Cannon has a total claim of $2,176,872.64 against the Debtors while the Personal Guarantee Claim amounts to approximately $500,000.00. Further, given that there are multiple secured creditors with similar personal guarantee claims against the Debtors' principals, the value of the Personal Guarantee Claim is questionable. None of the constituencies in these cases has voiced concerns about potential conflict of interest issues nor do they seem to view Constantine Cannon's presence in the Committee as a detriment to their interest or to the Debtors' reorganization process. To the contrary, the Court finds that both Constantine Cannon's knowledge of the Debtors' business and its unique interest in the Debtors' Chapter 11 cases would likely aid the Committee in the Debtors' reorganization case.

## Conclusion

While status as a large creditor does not automatically ensure a creditor membership on the Committee, *Drexel*, 118 B.R. 209, 212, given the nature of this case, the lack of objections from the Debtors or other creditors, and the resolution of the privilege and conflicts concerns raised by the UST, the Court finds that the totality of the circumstances weighs in favor of appointing Constantine Cannon to the Committee in the

Debtor's Chapter 11 case.  Therefore, the Court finds Constantine Cannon has established that its interests as an unsecured creditor are not currently adequately represented by the Committee.

For the foregoing reasons, the Motion is GRANTED.  Constantine Cannon is directed to settle an order consistent with this opinion.

Dated: New York, New York

**August 11, 2010**

       **/s/Arthur J. Gonzalez**
ARTHUR J. GONZALEZ
CHIEF UNITED STATES BANKRUPTCY JUDGE